Bertha F. HAYDEN et al.

v.

Lawrence E. HAYDEN.

No. 2006–80–Appeal.

Supreme Court of Rhode Island.

June 28, 2007.

Jeremiah R. Leary, Esq., Tiverton, for Plaintiff.

Thomas T. Brady, Esq., Tiverton, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendant, Lawrence E. Hayden, appeals from a judgment of the Superior Court that was favorable in part to the plaintiffs, Bertha F. Hayden, John B. Hayden, and Dale A. Hayden, with respect to a controversy concerning a right-of-way across certain land owned by the plaintiffs[1] in Tiverton, Rhode Island. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

### Facts and Travel

The litigation giving rise to this appeal was commenced in 1993 by Bertha F. Hayden against her brother, Lawrence E. Hayden, for the purpose of determining the meaning and effect of certain language contained in the will of their deceased father, William H. Hayden. Pursuant to the terms of that will, which was executed on June 18, 1982, William[2] divided a certain parcel of real property (the first parcel) between Lawrence and Bertha; he also devised to Lawrence a right-of-way and an easement over the portion which was devised to Bertha.

Specifically, Article IV(C) of William's will contained a description of the real estate devised to Lawrence and provided:

"Said real estate is devised together with a right-of-way and easement to the said LAWRENCE E. HAYDEN, his successors and assigns to pass and repass by foot or by vehicle over the driveway leading Easterly from Highland Road over and across the land hereinafter devised to my daughter, BERTHA F. HAYDEN."

Article IV(D) of William's will contained a description of the real estate devised to Bertha and provided:

"Said real estate is devised subject to the right of my son, LAWRENCE E. HAYDEN, his successors and assigns to pass and repass by foot or by vehicle over and across the existing driveway running Easterly from Highland Road across said premises to land hereinbefore devised to the said LAWRENCE E. HAYDEN."

William's will also provided that the rest of his "real estate situated Easterly of Highland Road" (the second parcel) was to be sold, and the proceeds from that sale were to be divided among his five other children. Pursuant to the terms of the will, however, Lawrence was to have a right of first refusal with respect to the second parcel, provided that he was willing to pay the fair market value for same.

On January 11, 1992 (almost ten years after executing his will), William died. On April 16, 1993, Lawrence exercised his right of first refusal and purchased the second parcel.

Bertha and Lawrence were subsequently unable to agree as to the correct location of the boundaries of the real property

---

1. While the litigation giving rise to this appeal was pending, Bertha conveyed her interest in the property to her nephew, John B. Hayden, and his wife, Dale A. Hayden, who were thereafter added as parties plaintiff.

2. For the sake of clarity, we shall refer to the various members of the Hayden family by their first names; we intend no disrespect.

that had been devised to each of them. They were also unable to agree as to what uses would be permitted with respect to the right-of-way and easement that had been devised to Lawrence. Accordingly, Bertha commenced this civil action, seeking to have the court construe the will in order to determine its meaning with respect to (1) the appropriate boundaries between their respective properties; (2) the rights that were devised to Lawrence with respect to the right-of-way; and (3) the rights that were devised to Lawrence with respect to the easement.

A nonjury trial took place on December 18, 1995 and on April 11, 1996. The trial justice rendered a decision on April 12, 2005.[3] At the outset of that decision, the trial justice noted that, although there were three issues in dispute at the time of trial, by the time his decision was rendered the parties had reached an agreement about the appropriate boundary lines between their respective properties and about the easement issue.[4] With respect to the remaining issue in dispute—namely, the nature and extent of Lawrence's rights relative to the right-of-way—the trial justice made the following findings of fact.

The real estate that is described in the will was acquired by William and his wife in 1951. Situated on that property was the main house as well as other structures, including a horse barn and a carriage barn, which buildings were later converted into a garage. In 1961, after having lived with his parents in the main house, Lawrence took possession of the garage and converted it over time into a house. He also maintained, altered, and improved all of the land that his parents had acquired in 1951. Specifically, among other activities, Lawrence cultivated various woods for burning, "grew engineering wood" (an endeavor which, as the trial justice commented, was not explained at trial), raised sheep, and repaired fences and stone walls. When William owned the parcels,[5] access to the second parcel was had only by means of the driveway that he later designated in his will as the right-of-way that was included in the devise to Lawrence.[6]

In 1982, Lawrence purchased 100 seedling Christmas trees, which he planted on the second parcel in 1983. Accordingly, at the time William executed his will in 1982, there was not yet a Christmas tree farm on his property. Lawrence sold approxi-

---

**3.** It is regrettable that so long a period of time passed between the conclusion of the trial and the issuance of the decision by the trial justice. There is nothing in the record that adequately explains a delay of this magnitude, although we do acknowledge that settlement negotiations were engaged in for almost three years after the conclusion of the trial. See *Newport Realty, Inc. v. Lynch*, 878 A.2d 1021, 1030 n. 4 (R.I.2005).

**4.** Despite the trial justice's finding that the boundary line issue and the easement issue had been resolved by the parties prior to his rendering a decision, defendant has nonetheless presented arguments on appeal concerning those issues. However, defendant has not directed our attention to any evidence demonstrating that those two issues were not resolved by the parties; and, as we discuss

*infra*, we perceive no error with respect to the trial justice's finding in this regard.

**5.** It will be recalled that William died in 1992 and that Lawrence exercised his right of first refusal and purchased the second parcel in 1993.

**6.** The trial justice also noted plaintiffs' suggestion that the second parcel could be accessed by a thirty-foot driftway. The defendant contended that said driftway had become overgrown with trees and vegetation and was therefore not available as a means of accessing the second parcel. The trial justice indicated that, until William's death in 1992, there was no reason to consider the driftway as a means of access since William owned both parcels and therefore had access to all of the land.

mately 37 Christmas trees in 1989, 70 trees in 1990, and 100 trees in 1991. From 1991 through 1995, Lawrence sold between 100 and 150 trees each year, and he also provided some trees to friends and relatives.

The purchasers of the Christmas trees generally utilized the driveway to gain access to the second parcel, although some purchasers parked their cars along the road and walked from there to the Christmas tree farm. Some purchasers would visit the property just once to buy a tree, while others would visit twice—the first time to select a tree and the second to take it home. Using figures that were supplied by Lawrence at trial, the trial justice estimated that, assuming that one-third of the purchasers required one visit to the property and that two-thirds required two visits, there were approximately 250 trips up and down the driveway over the course of the tree-selling period.

The trial justice found that the driveway was "at best 10 to 12 feet wide." He further found that vehicles could not pass each other as they proceeded over the driveway from Highland Road to the second parcel. Instead, a vehicle faced with an oncoming car on the driveway would generally pull off the driveway onto the abutting grass area, leaving ruts.

The trial justice determined that the language in the will concerning the right-of-way was unambiguous, and he also stated that none of the evidence presented caused him to conclude otherwise. Accordingly, he found that there was no reason to look beyond the language of the will in order to construe the relevant provision.

Final judgment was entered on May 17, 2005. In that judgment, the trial justice ruled as follows:

"Defendant and his heirs, assigns and invitees shall have the right to pass and repass on foot or with vehicles over the driveway * * * only for the *purpose of benefiting* * * * [Lawrence's devise] and not for the benefit of any other land title to which is vested in Defendant."

The trial justice further ordered that defendant and his agents, servants, employees, successors, or assigns be restrained and enjoined permanently from using the driveway for any purpose whatsoever in connection with the second parcel. The defendant filed a timely notice of appeal.

### Standard of Review

■ It is well settled that the findings of a trial justice in a nonjury civil trial are given great deference when reviewed by this Court. *See, e.g., Carpenter v. Hanslin,* 900 A.2d 1136, 1141 (R.I.2006); *In re Dissolution of Anderson, Zangari & Bossian,* 888 A.2d 973, 975 (R.I.2006); *Burke–Tarr Co. v. Ferland Corp.,* 724 A.2d 1014, 1018 (R.I.1999). When interpreting the language of a will, however, we proceed on a *de novo* basis, just as we do when we interpret the language in contracts. *See Chile v. Beck,* 452 A.2d 626, 628 (R.I.1982); *see also King v. Grand Chapter of Rhode Island Order of the Eastern Star,* 919 A.2d 991, 999 (R.I.2007); *Zarrella v. Minnesota Mutual Life Insurance Co.,* 824 A.2d 1249, 1259 (R.I.2003).

### Analysis

■ On appeal, defendant asserts that the trial justice committed error when he failed to determine the correct boundary lines with respect to the devises to Lawrence and to Bertha. It is Lawrence's contention that, had the trial justice made such a determination, he would have had to conclude that the Christmas tree farm was partially located on the devise to Lawrence rather than being located entirely on the second parcel. Consequently, defendant argues that it was his father's intent that the right-of-way over the driveway

included access to the Christmas tree farm for prospective tree purchasers.

As noted *supra*, the trial justice noted at the outset of his decision that the parties had reached an agreement with respect to the boundary lines and the easement. In fact, a survey plan reflecting the agreed-to boundary lines was appended to the trial justice's decision. The defendant has not pointed to any evidence indicating that such an agreement was not reached, and we can perceive no error with respect to the trial justice's finding in this regard. As a result, defendant is precluded from now asserting that the trial justice erred in not making a determination as to the correct boundary lines.

Since we have concluded that the location of the boundary lines is not properly before us, we need review only the trial justice's ruling concerning the testator's intent with respect to the extent of the right-of-way devised to Lawrence. *See MacDonald v. Manning*, 103 R.I. 538, 544–45, 239 A.2d 640, 644 (1968) ("Our primary obligation is to ascertain, if possible, the testator's dispositive intent as expressed in his will and to give effect thereto unless it is in violation of law.").

When faced with the task of ascertaining testamentary intent, this Court adheres to the principle that, when that intent can be determined "from within the four corners of the will, resort to extrinsic evidence is unnecessary and improper, and the invocation of rules of construction is uncalled for." *Greater Providence Chapter, R.I. Association of Retarded Citizens v. John E. Fogarty Foundation for the Mentally Retarded*, 488 A.2d 1228, 1229 (R.I.1985); see also *Manufacturers National Bank of Troy, N.Y. v. McCoy*, 100 R.I. 154, 158, 212 A.2d 53, 55 (1965) ("It is only when in the search we find, instead of evidence of intention, ambiguity or doubt as to intention or language equally suscep-

tible of conflicting inferences as to what was the dispositive intent that we resort to the rules of construction.").

After reviewing the record, we share the view of the trial justice that the right-of-way language in William's will is clear and unambiguous and that it is does not contain any right-of-way provision with respect to the second parcel. The portion of the will addressing the second parcel, which Lawrence purchased after William's death and on which is located the Christmas tree farm, contains absolutely no reference to a right-of-way; the only right-of-way that William included in his will was the right-of-way to that portion of the first parcel that had been devised to Lawrence.

Accordingly, the trial justice was correct in enjoining Lawrence and his assigns from utilizing the driveway on the first parcel in order to access the Christmas tree farm.

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in all respects. The record may be remanded to that Court.