David L. STEINHOF et al.

v.

Michelle J. MURPHY et al.

No. 2008–136–Appeal.

Supreme Court of Rhode Island.

April 19, 2010.

for summary judgment with respect to the conversion count.

John M. Verdecchia, Esq., Providence, Raymond C. Holland, Esq., for Plaintiffs.

Jeremiah C. Lynch, III, Esq., Middletown, for Defendants.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Chief Justice SUTTELL, for the Court.

The plaintiffs, David L. Steinhof, Michael E. Steinhof, Gregory E. Steinhof, Edward J. Steinhof, and Jody Louise Fedele (collectively the Steinhofs), and the defendants,[1] Elizabeth Ferland, Charles Ferland, and Oscar M. Ferland (collectively the Ferlands), as heirs at law of Laura V. Ferland, cross-appeal from the Superior Court's summary judgment (1) dividing the corpus of the trust established by Robert Steinhof (Robert)[2] into two equal shares: one for Alice Bouchard (Alice) and one for the Steinhofs, as heirs to Edward J. Steinhof (Edward), and (2) directing that a proportional share of federal and state estate taxes be paid out of the trust. For the reasons stated in this opinion, we affirm in part and vacate in part the summary judgment of the Superior Court.

---

1. Michelle J. Murphy (Michelle) is also a defendant in this matter, but she did not appeal from entry of summary judgment. In their answers and trial memoranda supporting their respective motions for summary judgment, Michelle and the Ferlands shared positions on both the issue of tax apportionment and the division of trust assets. On appeal, however, Michelle now advocates the Ferlands' position on the issue of tax apportionment, and the Steinhofs' position on the division of trust assets. Therefore, Michelle requests that we affirm the decision in both respects.

2. We identify the parties by their first names solely for the sake of clarity. No disrespect is intended.

# I

## Facts and Procedural History

Robert was predeceased by his wife, Avis Steinhof, and the couple had no children. Robert had four sisters, Eugenia Stoutnar, Josephine Steinhof, Laura, and Alice, and one brother, Edward.

This dispute arises, in part, from a will (the 1994 will) and a trust (the trust) that Robert executed and established on December 28, 1994. At the time the trust and the 1994 will were executed, Edward and Alice were Robert's only living siblings. On February 10, 1999, Robert executed the "First Amendment of the Robert Steinhof Declaration of Trust" (the 1999 amendment). The 1999 amendment reaffirmed most of the terms of the trust, but named Alice and her daughter Michelle Murphy (Michelle) as successor trustees. Robert executed a second will on November 5, 2003 (the 2003 will), which expressly revoked and annulled "all other and former wills" he had made.

The trust provided in relevant part:

## "ARTICLE VII

### "*FINAL DISTRIBUTION*

" * * * the entire Trust estate upon my death if my wife does not survive me, shall be held in Trust and administered as follows:

"*Section A. Generation–Skipping Trusts.*

"(1) *Establishment.* The portion, or portions, if any, of the Trust Estate to which generation-skipping tax exemption was or is allocated by virtue of my death, or the death of my spouse, shall be divided to provide (a) one equal share for Settlor's brother, Edward J. Steinhof, and Settlor's sister, Alice Bouchard, each to be held as a separate trust for their benefit under *subsection (2)* of this

Section A, ARTICLE VII, and (b) one equal share for the issue, collectively, of Settlor's then deceased brother or sister, also to be administered as a separate trust for the benefit of those issue pursuant to *subsection (2)* of *Section A, ARTICLE VII.* In the event Settlor's brother or Settlor's sister shall predecease Settlor with no surviving issue, such deceased brother's or sister's share shall be distributed equally amongst the then remaining shares established hereunder.

" * * *

"*Section B. Family Trusts.*

"(1) *Establishment.* The rest, residue, and remainder of the Trust Estate shall be divided to provide (a) one equal share for Settlor's brother and Settlor's sister, each to be held as a separate trust for Settlor's brother's and Settlor's sister's benefit under *subsection (2)* of this *Section B* of this *ARTICLE VII,* and (b) one equal share for the then living issue, collectively, of each then deceased brother or sister of Settlor, to be administered for the benefit of those issue pursuant to *subsection (2)* of *Section B* of this *ARTICLE VII.*

"(2) *Administration.*

"(a) *Income.* Until the time for termination and liquidation of a separate trust, as prescribed below in *subsection (3)* of this *Section B, ARTICLE VII,* Trustee shall distribute only so much of the income of each separate trust, as in its sole discretion is necessary, for the proper health, education, maintenance, and support of Settlor's brother or Settlor's sister or, unless otherwise appointed by Settlor's brother or Settlor's sister pursuant to *subsection (4)* of this *Section B, ARTICLE VII,* per stirpes to the issue of that deceased brother or sister of Settlor.

"(b) *Principal.* Until the time for termination and liquidation of a separate trust, as prescribed below in *subsection (3)* of this *Section B, ARTICLE VII,* Trustee shall distribute only so much of the principal from a separate trust, as in its sole discretion is necessary, for the proper health, education, maintenance, and support of Settlor's brother or Settlor's sister or, unless otherwise appointed by Settlor's brother or Settlor's sister pursuant to *subsection (4)* of this *Section B, ARTICLE VII,* for the proper health, education, maintenance, and support of the issue of Settlor's brother or Settlor's sister."

On August 27, 2004, Robert passed away, and Alice was his only surviving sibling. Alice subsequently passed away on March 31, 2005, thereby leaving her daughter, Michelle, as trustee of the trust and executrix of Robert's estate. Michelle was also the sole beneficiary under her mother's last will and testament. Laura was survived by three children, Elizabeth Ferland, Charles Ferland, and Oscar Ferland. Robert's other two sisters, Eugenia Stoutnar and Josephine Steinhof, died without issue.

On September 18, 2006, the Steinhofs filed an action seeking a declaration, under the Uniform Declaratory Judgments Act, G.L. 1956 § 9–30–1, that they be awarded a one-half share of the trust assets and that Michelle, as executrix of Robert's estate, be ordered to reimburse the trust for the estate taxes that were charged against it. The Ferlands answered on October 30, 2006. On November 2, 2006, Michelle answered and counterclaimed seeking a declaration that she, the Steinhofs, and the Ferlands each be awarded a one-third share of the trust assets, and an order that a proportional share of estate taxes be paid out of the trust. Thereafter, Michelle

and the Ferlands filed motions for summary judgment under Rule 56 of the Superior Court Rules of Civil Procedure. The Steinhofs subsequently filed an objection and a cross-motion for summary judgment.

The motion justice issued a written decision on July 27, 2007, granting plaintiffs' motion for summary judgment in part and denying it in part, and granting defendants' motion for summary judgment in part and denying it in part. With respect to the division of the trust corpus, the motion justice granted plaintiffs' motion for summary judgment in part, dividing the trust into two equal shares, one share for the benefit of Alice Bouchard and one share for the Steinhofs. With respect to the apportionment of estate taxes, the motion justice granted summary judgment for defendants, declaring that a proportional share of federal and state estate taxes would be paid out of the trust. Summary judgment was entered on August 29, 2007. Thereafter, the Ferlands and the Steinhofs cross-appealed.

## II

### Standard of Review

In reviewing the Superior Court's judgment on the parties' cross-motions for summary judgment, "we examine the matter *de novo* and apply the same standards as those used by the trial court." *Delta Airlines, Inc. v. Neary,* 785 A.2d 1123, 1126 (R.I.2001). "The hearing justice may grant the motion for summary judgment only if * * * he or she determines that 'no issues of material fact appear and the moving party is entitled to judgment as a matter of law * * *.'" *Estate of Giuliano v. Giuliano,* 949 A.2d 386, 391 (R.I.2008) (quoting *Steinberg v. State,* 427 A.2d 338, 340 (R.I.1981)). Moreover, "in ruling on a motion for summary judgment, the [motion] justice must look for

factual issues, not determine them." *Steinberg,* 427 A.2d at 340.

### III

### Discussion

### A

### Division of Trust Assets

■ The Ferlands contend that the motion justice should have granted summary judgment in their favor, rather than for the Steinhofs, because the trust should be construed to divide the trust corpus into three equal shares: one for Alice, one for Edward's heirs, and one for Laura's heirs. More specifically, the Ferlands assert that Article VII, Section B of the trust is unambiguous on its face, and thus it was improper for the motion justice to look to other provisions of the trust to ascertain Robert's intent. The Ferlands also assert that the motion justice incorrectly relied on the absence of any specific reference to Laura in the trust. Such reliance was improper, according to the Ferlands, because the provisions that specifically name Edward and Alice refer to a power of appointment and an interest for Robert's living siblings, neither of which could have applied to Laura, who was deceased at the time the trust was drafted.

Michelle and the Steinhofs counter that the motion justice did not err in granting summary judgment for the Steinhofs because construction of the trust requires its division into two equal shares: one for Alice and one for Edward's heirs. Specifically, the Steinhofs argue that the trust and the 1999 amendment clearly reflect Robert's intention for the trust to benefit only Edward, Alice, and their issue. To support their position, the Steinhofs note that every reference in Article VII is to

Robert's brother or sister in the singular, that the trust as a whole never refers to his brothers or sisters in the plural, and that the trust does not refer to any of Robert's siblings by name other than Edward and Alice.

■ This Court's "primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law." *Fleet National Bank v. Hunt,* 944 A.2d 846, 851 (R.I.2008) (quoting *In re DiBiasio,* 705 A.2d 972, 973 (R.I.1998)). To ascertain the settlor's intent, donative language should be interpreted with reference to the whole trust. *See Chile v. Beck,* 452 A.2d 626, 628 (R.I.1982) (noting that a phrase contained in a will should not be viewed "in a vacuum," but rather should be read in light of the rest of the will).[3] Moreover, the words of a trust should be "given their primary, ordinary, and common meaning unless it plainly [appears] that they were used in some other sense." *Hunt v. Citizens Trust Co.,* 519 A.2d 1120, 1122 (R.I.1987) (quoting *Prince v. Roberts,* 436 A.2d 1078, 1081 (R.I.1981)).

■ If the language of a trust or a will "expressly states the [settlor or] testator's intention, resort to the rules of * * * construction is without warrant; it is when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked." *In re DiBiasio,* 705 A.2d at 973–74 (quoting *Goldstein v. Goldstein,* 104 R.I. 284, 287, 243 A.2d 914, 916 (1968)). Therefore, our rules of construction should be used only when the meaning of a trust is not apparent from the plain and ordinary meaning of its language or, in other words,

---

**3.** Here, the rules for the construction of wills are equally applicable to the construction of trusts. *See, e.g., Fleet National Bank v. Hunt,* 944 A.2d 846, 851 (R.I.2008).

when it is ambiguous. Furthermore, when donative intent cannot be determined from within the four corners of a will or a trust, resort to extrinsic evidence may be proper. *See Hayden v. Hayden,* 925 A.2d 947, 951 (R.I.2007) (quoting *Greater Providence Chapter, R.I. Association of Retarded Citizens v. John E. Fogarty Foundation for the Mentally Retarded,* 488 A.2d 1228, 1229 (R.I.1985) (noting that when determining intent, "this Court adheres to the principle that, when that intent can be determined 'from within the four corners of the will, resort to extrinsic evidence is unnecessary and improper' ")).

■ This Court has held that "[a]mbiguous language in a will or a trust presents the trial justice with a mixed question of law and fact * * *." *In re DiBiasio,* 705 A.2d at 974. In granting summary judgment for Michelle and the Steinhofs, the motion justice summarized the legal standard for the construction of trusts. She also concluded that, "[a]fter reviewing the trust document in its entirety, it is clear that Robert intended to provide for only Edward J. Steinhof and Alice Bouchard and their issue." Although the motion justice did not explicitly state that she found the trust unambiguous, the motion justice could not have granted the motion for summary judgment in the absence of such a determination. Summary judgment may only be granted when the moving party is entitled to judgment as a matter of law, and a trust must be unambiguous to construe it as a matter of law. The motion justice in granting summary judgment, therefore, necessarily determined that the trust was unambiguous.

It is clear to us, however, that the trust contains ambiguities that cannot be resolved by rules of construction; therefore, it may be necessary to resort to the introduction of extrinsic evidence to ascertain Robert's intention for the final distribution of the trust corpus, as reflected in the wording of Article VII, Section B of the trust. *See Prince,* 436 A.2d at 1081 (noting that the trust provision's patent and latent ambiguities required the introduction of extrinsic evidence for resolution).

The trust provision at issue, again, states in pertinent part:

"*Section B. Family Trusts.*

"(1) *Establishment.* The rest, residue, and remainder of the Trust Estate shall be divided to provide (a) one equal share for Settlor's brother and Settlor's sister, each to be held as a separate trust for Settlor's brother's and Settlor's sister's benefit under *subsection (2)* of this *Section B* of this *ARTICLE VII, and* (b) one equal share for the then living issue, collectively, of each then deceased brother or sister of Settlor, to be administered for the benefit of those issue pursuant to *subsection (2)* of *Section B* of this *ARTICLE VII.* In the event Settlor's brother or Settlor's sister shall predecease Settlor with no surviving issue, such deceased brother's or sister's share shall be distributed equally amongst the then remaining shares established hereunder." (Emphasis added.)

In our opinion, the word "sister" as used throughout the trust created an ambiguity, because it is unclear whether the word was intended to be interpreted broadly to incorporate its plural form. The ambiguity becomes apparent when considering the application of the terms, because Robert had two sisters with issue to whom Robert could have been referring. Namely, at the time of the trust's creation, Robert had two living siblings, Edward and Alice, and one deceased sister with issue, Laura. It was possible, at that time, that Robert could have predeceased both Edward and Alice. If he had, Edward and Alice each would have received one half of one share

of the trust under subsection (1)(a) of Article VII, Section B, and subsection (*l*)(b) would have either created a share for the Ferlands, under the Ferlands' reading of the text, or it would have been rendered inoperative, under the Steinhofs' reading. Therefore, under a reading of the trust that gives every clause effect, it could be possible that Robert intended to provide for the Ferlands. *See generally Lewis v. Douglass,* 14 R.I. 604 (1884) (construing a will to give effect to each clause).

In contrast, an alternative reading of the trust may suggest that Robert intentionally omitted the Ferlands. Specifically, the plain and ordinary meaning of the word "sister" denotes a single sister, and some uses of the word "sister" within the trust further suggest that the term was not intended to incorporate the plural form of the word.[4]

We do not highlight these arguments to suggest that any one of them is dispositive in construing the trust, but rather to suggest that when both parties' arguments are scrutinized it is clear that the trust contains ambiguities that cannot be resolved without introducing extrinsic evidence. Given the ambiguous nature of the trust, we conclude that questions of material fact exist that were not appropriate for summary disposition. *Cf. D.T.P., Inc. v. Red Bridge Properties, Inc.,* 576 A.2d 1377, 1381 (R.I.1990) (noting that "summary judgment may not be proper when the case involves an ambiguous contract because the ambiguity creates a question of fact").

At oral argument, it became apparent that there are additional material facts that have not been established in the record. The record contains no affidavits attesting to the relationship between Robert and his nieces, nephews, sisters, or brother, the drafting attorney's understanding of Robert's intention, or other elucidating facts. *See Doar v. Doar,* 63 R.I. 18, 23, 6 A.2d 738, 740 (1939) (noting that a will should be construed with "reference to the whole will, to the subject matter relative to which it speaks, and to the circumstances existing at the time of the execution of the will respecting the testator's family and estate"). Thus, we believe that material issues of fact remain to be established at trial, and we remand this case for trial.

**B**

**The Assignment of Estate Tax Liability**

■ The Steinhofs aver, with respect to the second issue on appeal, that the motion justice erred in granting summary judgment for defendants, thereby apportioning any taxes due between the trust and the residuary estate. The Steinhofs contend that the trust clearly states that all taxes were to be paid entirely by Robert's estate, unless the taxes exceeded the liquid assets of the estate. The Steinhofs further contend that the motion justice incorrectly concluded that the tax allocation provision in the 2003 will modified the tax assignment provision of the trust, because, under Rhode Island law, the terms of a will cannot modify an *inter vivos* trust. Here, according to the Steinhofs, the trust reserved powers for its modification, but no such power was reserved to modify the trust by the 2003 will. Moreover, the Steinhofs argue that the language of the 2003 will is ambiguous in providing for tax apportionment because it refers to "other property," and not to the trust by name.

---

4. Interestingly, Robert included the following language in Article IX of his trust: "For convenience, I refer to my fiduciaries in the singular and neuter gender, and any reference to my fiduciaries shall include the masculine and feminine and plural of them * * *." He did not, however, include a similar disclosure regarding the use of the word "sister."

Michelle argues that the motion justice did not err in apportioning taxes between the probate estate and the trust estate, and she disagrees with the Steinhofs about the appropriate analysis in which this Court should engage. She argues that the issue is not whether the trust can be modified by the 2003 will, but rather whether the 2003 will contains language opting out of the default tax apportionment rule, as required by the Uniform Estate Tax Apportionment Act, G.L. 1956 chapter 23.1 of title 44 (UETAA). According to Michelle, the UETAA provides that, unless a will states otherwise, taxes are to be apportioned among all persons interested in the estate, with "estate" defined to include trust assets. Therefore, Michelle contends that only explicit language in a will can override the statutory presumption of apportionment between taxes due on trust assets and probate assets passing under a will. The Ferlands did not address the issue of tax apportionment on appeal.

Rhode Island has adopted the UETAA. Section 44–23.1–2 states:

> "Unless the will provides, the tax is apportioned among all persons interested in the estate. The apportionment is made in the proportion that the value of the interest of each person interested in the estate bears to the total value of the interests of all persons interested in the estate. The values used in determining the tax are used for that purpose."

■■■ "When interpreting a statute, our ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute. Thus, a clear and unambiguous statute will be literally construed." *State v. Germane*, 971 A.2d 555, 574 (R.I.2009) (quoting *Mar-*

*tone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003)). In addition, § 44–23.1–9 of the UETAA states that, "[t]his chapter shall be applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among those states, which enact it."

■■■ The plain language of the UETAA clearly requires the apportionment of state and federal estate taxes among all persons interested in the estate, unless the will otherwise provides. Other states agree, in interpreting their statutes modeled after the UETAA, that the statutes are mandatory in nature, thus requiring apportionment unless a testator directs otherwise in his or her will. *See, e.g., Bushee v. Bushee,* 303 N.W.2d 320, 322 (N.D.1981) ("The estate taxes will be paid according to the apportionment statute unless the decedent's will directs in clear and unambiguous language a method of apportionment different from that provided by the statute."); *In re Estate of Hilliar,* 498 P.2d 1237, 1239 (Wyo.1972) ("[A] directive against apportionment should be expressed in clear and unambiguous language."); *see also* 42 Am.Jur.2d *Inheritance, Estate, and Gift Taxes* § 312 (2000) ("[I]n the absence of a clear and unambiguous direction to the contrary in a will, apportionment of estate taxes pursuant to statute will be directed, and if there is any doubt as to what the decedent intended, the statutory direction to apportion is absolute").

The controlling will[5]—the 2003 will—does not direct against apportionment, but to the contrary, the introductory paragraphs of the 2003 will state:

---

**5.** Although it is undisputed that the 1994 will was revoked in 2003, when Robert executed his 2003 will, we note that Robert's 1994 will also contained a provision providing for apportionment. This language was reaffirmed in the 1999 amendment.

"*FIRST:* I direct my Executrix hereinafter named to pay all of my just debts and funeral expenses as soon after my death as practicable.

"I direct my said Executrix to pay out of the principal of my residuary estate as hereinafter given, devised and bequeathed, any and all estate, inheritance, succession, legacy, transfer or similar death taxes, including any interest or penalties thereon, which may be levied or assessed in respect to any property or interest therein passing under this my Last Will and Testament or any Codicil thereto.

"I specifically direct that such taxes which shall become due and payable in respect to any other property required to be included in my gross estate for the purpose of computation of such taxes shall be apportioned against, and paid out of, such other property[.]"

■ Thus, in the 2003 will, Robert assigns tax liability consistent with the UETAA's default rule, directing that taxes arising from "any other property" included in his gross estate for the purpose of tax computation must be apportioned against

and paid out of that property. The trust certainly falls under the umbrella of "any other property" included in his gross estate, and, as such, the taxes must be apportioned against and paid out of the trust. In short, the will clearly and unequivocally adopts the UETAA's presumptive estate tax apportionment rule. When, as is the case here, a will provides for the assignment and payment of tax liability, the will controls the tax assignment of the decedent's estate. *See* § 44–23.1–2 (providing for tax apportionment "[u]nless the will provides").

■ The Steinhofs' argument that the tax obligation should be the liability of the trust rather than the will is without merit. The Steinhofs contend that the only issue here is whether the 2003 will amended or modified the trust.[6] The UETAA, however, clearly states that the only language that can override the statutory apportionment is that of a will. The parties have provided us with no support for the proposition that a tax provision in an *inter vivos* trust defeats apportionment provided for in a will. The inquiry, therefore, hinges on the mandatory directive of the UETAA,

6. Specifically, the Steinhofs direct our attention to the following provisions of the trust specifying the reserved rights to alter, modify, or amend the trust and addressing tax liability:

"ARTICLE III
"*RIGHTS AND POWERS RESERVED*

"I hereby reserve the following rights and powers, to be exercised by me at any time, and from time to time, by delivery to Trustee of a written, signed, and acknowledged statement subscribed to by two witnesses, setting forth my intention:
"* * *
"(3) To alter, modify, or amend this Declaration of Trust in any particular or general respect, provided that the duties and responsibilities of a Trustee other than myself shall not be permitted to be changed without the Trustee's approval[.]"

"ARTICLE IV
"*POST–DEATH MANAGEMENT*

"* * *
"*Section C. Taxes, Tax Allocation.* Trustee shall pay to the Personal Representative of my estate, as a cost or expense of administration of my estate, such amounts as are certified in writing by my Personal Representative as due for estate, death, inheritance, transfer, income, and excise taxes (specifically excluding generation-skipping taxes), including interest and penalties thereon, if any, which are payable to any state taxing authority or the United States, and which exceed the liquid assets of my estate subject to administration by my Personal Representative."

§ 44–23.1–2, and does not depend, as the Steinhofs assert, on whether the will modified or revoked the trust in part. Where, as is the case here, the tax allocation clause of a trust conflicts with the clear language of a will, the language of the will controls and estate taxes should be apportioned and paid in accordance with the will.

## IV

### Conclusion

For the reasons set forth in this opinion, we vacate in part the summary judgment of the Superior Court as to the division of the trust corpus and affirm in part the summary judgment of the Superior Court as to the apportionment of tax liability. The record shall be remanded to the Superior Court for proceedings consistent with this opinion.