Leonard I. LAZARUS

v.

William H. SHERMAN et al.

No. 2008–228–Appeal.

Supreme Court of Rhode Island.

Jan. 6, 2011.

Jeffrey S. Michaelson, Esq., No. Kingstown, for Plaintiff.

Matthew F. Medeiros, Esq., Providence, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice INDEGLIA, for the Court.

After nearly thirteen years of litigation, during which time this case was dismissed from the Superior Court for failure to prosecute and later reinstated, the parties came before the Supreme Court for oral argument on December 1, 2010. In this intrafamily dispute, the plaintiff, Leonard I. Lazarus, brought an action against the defendants, the Shermans, seeking the interpretation of two wills and a trust contained in them and a codicil to one of them. The trial justice found that the testators' intent could be determined from the four corners of the will, declined to turn to extrinsic evidence, and ruled in favor of the plaintiff.[1] He found that the codicil likewise was unambiguous and ruled in favor of the defendants.

On appeal, the defendants argue that the language of the trust provision is unambiguous but that it compels the opposite result from that which the trial justice reached. Alternatively, defendants argue that, even if the provision is ambiguous, the extrinsic evidence supports their interpretation. However, the extended and convoluted course that this case took to this Court engendered confusion among the parties and the trial justice about the questions before the trial court and its rulings. As a reflection of this uncertainty, defendants also argue in this appeal that the trial justice erred when he retracted, months later, a previous statement that he made in response to defendants' inquiry about the substance of a proposed

---

1. The trial justice retired during this drawn-out litigation and was invited back by the Presiding Justice of the Superior Court to assist in entry of a final judgment in the matter.

final judgment. Consequently, they submit that the entered judgment was not final because the statement was a holding that was necessary to resolve the issues raised. After careful review of the record and consideration of the parties' arguments, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The facts central to this case are undisputed. Frank Lazarus died in June 1994. His wife, Rose Lazarus, died slightly more than a year later, in August 1995. They were survived by their two children, plaintiff Leonard I. Lazarus (Leonard or plaintiff) and defendant Sandra H. Sherman (Sandra). William H. Sherman (William), also a defendant, is Sandra's husband. Sandra and William's sons, Gary L. Sherman (Gary) and Robert D. Sherman (Robert), are defendants as well.[2]

Frank and Rose both executed a last will and testament on March 30, 1994. The wills were mirror images of each other. However, on April 25, 1995, Rose amended her will with a duly executed codicil, which inserted language following the first paragraph of the Article Third of the will. This additional paragraph forgave "any loans" Rose made "to any child or grandchild." The plaintiff alleged, and defendants admitted, that on or about April 19 and May 30, 1995, Sandra borrowed a total of $150,000 from Rose.

Frank and Rose's estate plan included three trusts: the marital trust (Trust A), the family trust (Trust B), and the children's trust (Trust C). All three trusts were for the initial benefit of the surviving spouse. Upon the death of that spouse, all three trust estates were to be divided into equal shares in trust for the benefit of Leonard and Sandra and upon their deaths, the balances of the trust estates, "if any," were to be divided equally once more in trust for the benefit of Gary and Robert.[3] The notable difference among the trusts was the right to withdraw principal: Trust A conferred the right to withdraw principal on the surviving spouse, Trust B conferred the right to withdraw principal on Leonard and Sandra, and Trust C conferred the right to withdraw principal on Gary and Robert.

Rose survived Frank and was the initial beneficiary of each trust. Therefore, as pertinent to this appeal, upon her death, subparagraphs (a) and (b) of Trust B directed the cotrustees to divide the balance of Trust B into equal, one-half amounts in trust for the benefit of Leonard and Sandra, respectively. The cotrustees of Trust B were to "pay to or apply the net income of each share held in trust hereunder to or for the benefit of the individual beneficiary or beneficiaries thereof, in convenient installments, but not less frequently than

---

**2.** For clarity and simplicity, we will refer to Frank and Rose Lazarus and the parties by their first names. We intend no disrespect by doing so. We also will refer to Sandra, William, Gary, and Robert as, collectively, defendants. The remaining defendants, Peter M. Lazarus, Nancy G. Lazarus, Planned Parenthood Federation of America, Planned Parenthood of Rhode Island, and Miriam Hospital did not file an appeal.

**3.** Leonard has two children, Peter and Nancy Lazarus. These siblings received $10,000

each under the terms of Trust A, but were not beneficiaries of Trust B or C, as were their cousins, Robert and Gary. The reasons for this arrangement are unclear. The defendants suggest that it stemmed from Frank and Rose's dislike of the Lazarus children but, according to plaintiff, the pair were not beneficiaries of Trust B or C along with Robert and Gary because Frank and Rose believed that "[his] children would be provided for by their maternal grandparents."

quarter-annually." Significantly, the paragraph labeled as "(11)" of Trust B (paragraph 11) states that "Leonard I. Lazarus and Sandra H. Sherman shall have the right to withdraw and have paid over to them equally so much or all of the principal of [Trust B] as they at any time and from time to time direct in writing."

On March 28, 1997, Leonard filed a complaint in Superior Court alleging that "[u]nder date of September 19, 1996, [he] attempted to exercise his right of withdrawal of one-half the principal and accumulated income of Trust B pursuant to the power granted by the paragraph designated '11'." He requested a declaratory judgment as to "whether or not [he had] a unilateral power to withdraw one-half [of] the principal and accumulated income of Trust B under both Frank's and Rose's wills." In his answer, William, as cotrustee and defendant, "allege[d] that both Sandra and Leonard together have the right to request distributions from principal. This right to request distributions must be exercised by both Sandra and Leonard acting together in concert." The defendants asserted that Leonard's position was "contrary to the best interest of the beneficiaries of [Trust B] and to the express intent of [Frank and Rose]."

On April 15, 2004, the case was dismissed under G.L.1956 § 9–8–5 for lack of prosecution. On December 2, 2004, Leonard moved to vacate the order of dismissal or, alternatively, to reinstate the case. He said that the lack of prosecution was attributable, in part, to the pending legal malpractice action against the attorney who drafted Frank and Rose's wills, of which he was awaiting resolution before he continued to proceed with the instant case. After a hearing, plaintiff's motion to reinstate was granted on February 11, 2005. The parties were directed to conduct discovery and submit briefs.

This declaratory-judgment action finally came before a justice of the Superior Court on July 25, 2006. The trial justice reviewed the parties' written submissions, the attached exhibits, and the court file. First, the trial justice considered the meaning of the provision stating that "Leonard I. Lazarus and Sandra H. Sherman shall have the right to withdraw and have paid over to them equally so much or all of the principal of [Trust B] as they at any time and from time to time direct in writing." The trial justice stated his "oblig[ation] to effectuate the intents of the testator." He noted that the attorney who drafted the wills was deposed in this case, and "an inquiry into the perceptions of the drafter of the will" is permissible "if the will is so ambiguous that it cannot be construed otherwise." However, the trial justice did not consider the deposition testimony of the drafting attorney because he found that the will was not "so ambiguous." Rather, after examining the provision in question and "also considering the four corners of the will," the trial justice found that the provision was "very simple clear and direct" and, therefore, he could "determine what the testators had in mind" from the will alone.

The trial justice found that "it is clear that Leonard and Sandra have the prerogative under the will if they [choose] to exercise it, to get out their principal." Therefore, he concluded

"that the intent of the testator was not to have them make a joint request. It is clear that the monies assigned to Leonard, meaning half of the estate, in effect were to go to him. He could take it over time, get income payments or partial principal payments, or he could do what Paragraph 11 says, seek to get his entire half. He certainly can't invade any portion that is earmarked for Sandra, but it's clear he can get his money.

* * * Similarly, Sandra can get her money out if she wants or she can decline to exercise her prerogative and take only such portion of the principal she wants at any given time, leave the money * * * in the trust as she sees fit."

Next, the trial justice considered the meaning of the provision in the codicil to Rose's will that forgave loans that she made to her children and grandchildren. The trial justice found that "the codicil of Rose is absolutely clear; any loan made to a child or grandchild is forgiven." Therefore, he concluded that the codicil "extinguished" Sandra's obligation to repay the amount Rose loaned to her, and he stated that Rose "forgave the loan, and that's the end of it. The language could not be clearer."

An order reflecting the findings that the trial justice made at the hearing on July 25, 2006, was entered on August 17, 2006. The order declared that Leonard and Sandra both "[have] the legal right to cause a distribution of one half of the assets * * * of Trust B * * * without regard to whether the other makes a similar request, joins in such a request or otherwise." It also declared that the codicil to Rose's will "whereby she forgives loans * * * does not affect or alter the amount of any bequest made in the will." Finally, the order deferred consideration of the request for attorneys' fees, without prejudice, until raised by an appropriate motion.

The matter came before the trial justice again on October 19, 2006, to hear plaintiff's motion for attorneys' fees. After the issue of attorneys' fees was addressed, counsel for defendants informed the trial justice that he "hasn't indicated to counsel how you view the issue of whether the $75,000 payback that [Leonard] has to make by reason of the issue we won on, [and] how that gets factored into the judgment." [4] The trial justice suggested that counsel work together to create a proposed final judgment. He also appeared not to recall the issue concerning the "$75,000 payback," as he remarked that "frankly, you're calling to my attention this provision of what you refer to as a $75,000 payback." The trial justice went on to say, "I take it [that] it is [p]aragraph 2 [of the order] that you're saying *may* create the obligation [to repay $75,000]." (Emphasis added.) The hearing ended with defendants' counsel vowing that he and plaintiff's counsel will "try to muddle our way through" drafting a proposed judgment. Tellingly, the trial justice requested that the parties actually "unmuddle it."

4. The defendants arrived at this figure based on the unified gift and estate tax credit. When Rose died in 1995, the unified credit was $192,800. 26 U.S.C. § 2010(a) (1994). Under the Article Third of her will, Rose bequeathed to Leonard and Sandra "the sum * * * equal to the largest amount that can be allocated * * * without causing an increase in the federal estate tax payable at [her] death by reason of the unified credit allowable to [her] estate." Under the federal estate and gift tax law effective in 1995, this largest amount was $600,000. 26 U.S.C. § 2001(c)(1) (1994). The defendants argue that because the trial justice ruled "that the $150,000 loan forgiveness did not count against Sandra's share under Article Third," the amount available for distribution between Leonard and Sandra under this article was $450,000. According to defendants, as a result, Sandra and Leonard were entitled to bequests of only $225,000 each, rather than the $300,000 that they actually received. Therefore, defendants argue, Sandra and Leonard each must repay the estate the excess distribution of $75,000. Before this Court, Leonard argues that the tax return reflecting the $600,000 disbursement "was accepted and, in fact, examined by the [IRS], approved, and the statute of limitations has long since passed." Therefore, he contends, "right, wrong or indifferent, the distribution of $600,000.00 separate and apart from the loan forgiveness was accomplished without incurring an increased estate tax by virtue of the loan forgiveness, and that fact is now set in stone."

Unfortunately, they were not able to do so. The parties drafted their own proposed judgments but could not come to an agreement. The nub of the dispute between plaintiff and defendants was the alleged $75,000 "payback requirement" advocated for by defendants. Notwithstanding, on April 26, 2007, Leonard moved for entry of judgment. He argued that "there is no basis to include, in the [j]udgment or elsewhere, a payback requirement in the amount of $75,000.00 for each [Leonard] and [Sandra]."

Nearly a year after the issues in this case purportedly were decided, the parties again appeared before the trial justice on July 24, 2007 in an effort, according to the trial justice, to resolve "the form and substance of an order that would put this matter to rest, or at least move it in that direction." Although the trial justice had retired almost six months prior to being invited back to assist in the resolution of the final judgment, he acknowledged that he was "certainly in a better position than other members of this court to do that." The trial justice had a conference with counsel and reviewed the transcripts of the hearings that occurred on July 25, 2006, and October 19, 2006. He attributed the difficulties in coming to a final judgment "to optimism on all of our parts at the conclusion of the October 19th hearing * * * that we thought all matters had been resolved."

The trial justice recalled that the issue of a potential $75,000 reimbursement had been briefed, but that it "was not fully argued and certainly not addressed in any thoughtful and complete manner by me when it was called to my attention * * * for the first time, at least in open court, at the October 19 hearing." Therefore, he concluded that "this very narrow issue of whether either or both sides owes anything back to the trust * * * should be addressed by a separate miscellaneous petition" in Superior Court. The defendants then requested a stay, which the trial justice denied. Accordingly, a judgment was entered January 31, 2008. The defendants filed a timely notice of appeal.[5]

## II

### Issues on Appeal

The defendants raise two primary issues on appeal. First, they argue that the trial justice erred when he held that Trust B unambiguously allowed Leonard to withdraw one-half of the principal of the trust without Sandra's consent. Second, defendants contend that the trial justice erred when he denied their request to include in the judgment an order that each party repay the estate $75,000 after he appeared to agree that repayment may be proper. Additionally, they argue that because the judgment was entered absent such a repayment requirement, it was not final.

## III

### Standard of Review

 "[T]he findings of a trial justice in a nonjury civil trial are given great

---

5. Prior to oral argument, upon close examination of the record, this Court discovered that the timeliness of defendants' appeal was unclear. Specifically, a question arose about whether defendants filed a notice of appeal "within twenty (20) days of the date of the entry of the judgment" in accordance with Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure because the docket indicated that judgment was entered on January 10, 2008, but the notice of appeal was not filed until February 6, 2008. On October 14, 2010, this Court ordered that the matter be remanded to the Superior Court "for a determination of the date on which the judgment was entered." A justice of the Superior Court found that judgment was entered on January 31, 2008, and that the docket entry of January 10, 2008, was erroneous. Therefore, the appeal properly is before us.

deference when reviewed by this Court." *Hayden v. Hayden,* 925 A.2d 947, 950 (R.I. 2007). "When interpreting the language of a will, however, we proceed on a *de novo* basis, just as we do when we interpret the language in contracts." *Id.* (citing *Chile v. Beck,* 452 A.2d 626, 628 (R.I.1982)). "When the language of a will or trust is ambiguous, the trial justice is confronted with a mixed question of law and fact," and it is then that this Court applies a clearly erroneous standard of review to the trial justice's determinations. *Prince v. Roberts,* 436 A.2d 1078, 1080, 1081 (R.I.1981).

## IV

### Discussion

### A

#### Right to Withdraw from Trust B

■■■ The first issue before this Court on appeal is whether the trial justice erred when he ruled that the paragraph conferring on Leonard and Sandra the right to withdraw principal from Trust B was unambiguous and did not require them to act jointly. As we proceed with our *de novo* review of the language of Trust B, several principles guide our interpretation. First, "[t]his Court's 'primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or settlor as long as that intent is not contrary to law.' " *Steinhof v. Murphy,* 991 A.2d 1028, 1033 (R.I.2010) (quoting *Fleet National Bank v. Hunt,* 944 A.2d 846, 851 (R.I.2008)). In doing so, we initially examine the will or trust's "plain language." *Fleet National Bank,* 944 A.2d at 851. However, the language of a phrase "should be interpreted with reference to the whole trust" or will. *Steinhof,* 991 A.2d at 1033 (citing *Chile,* 452 A.2d at 628). Additionally, "[t]his [C]ourt has stated many times in effect that each will must be considered in the light of its particular language and the circumstances surrounding its making." *Rhode Island Hospital Trust Co. v. Thomas,* 73 R.I. 277, 281, 54 A.2d 432, 434 (1947); *see Carpenter v. Smith,* 79 R.I. 326, 332, 89 A.2d 168, 171 (1952) ("It is our duty in construing the will to throw our minds back to the time when it was made.").

■■■ We also "adhere[ ] to the principle that, when that intent can be determined 'from within the four corners of the will, resort to extrinsic evidence is unnecessary and improper, and the invocation of rules of construction is uncalled for.' " *Hayden,* 925 A.2d at 951 (quoting *Greater Providence Chapter, R.I. Association of Retarded Citizens v. John E. Fogarty Foundation for the Mentally Retarded,* 488 A.2d 1228, 1229 (R.I.1985)). Rather, " 'it is when the language under consideration is susceptible of being read as disclosing alternate or contrary intentions that the rules of construction properly may be invoked.' " *Steinhof,* 991 A.2d at 1033 (quoting *In re DiBiasio,* 705 A.2d 972, 973–74 (R.I.1998)). Accordingly, "when donative intent cannot be determined from within the four corners of a will or a trust, resort to extrinsic evidence may be proper." *Id.* at 1034 (citing *Hayden,* 925 A.2d at 951).

The defendants assert that the plain language of paragraph 11 of Trust B alone unambiguously reflects an intent for Leonard and Sandra to withdraw principal only together in equivalent amounts rather than individually. They argue that the definitions of the words "and," "them," "equally," and "they" in this paragraph compel this conclusion. The defendants are correct that the plain language of a will or trust first should be examined when ascertaining the testator or settlor's intent. *See Fleet National Bank,* 944 A.2d at 851. However, this language should not be considered "in a vacuum," but rather in light

of the will or trust in its entirety. *Steinhof,* 991 A.2d at 1033 (quoting *Chile,* 452 A.2d at 628). We decline to parse the dictionary definitions of these words because we agree with the trial justice and hold that the will considered as a whole, evinces the intent of Frank and Rose that Leonard and Sandra be allowed to withdraw principal from Trust B without the consent of the other.

For instance, significantly, the provisions of Trust B directed that, upon Rose's death, it be split into two distinct trusts. The cotrustees were to "divide the balance of the Trust Estate" into "[a]n amount equal to one-half (1/2) in trust" for each Leonard and Sandra. Therefore, Leonard and Sandra were to benefit from their own trusts containing an equal "share" of the balance of the trust estate rather than to benefit jointly from one trust. Additionally, according to the language of the provision at issue, Leonard and Sandra have the right to withdraw principal equally, which is achieved through the funding of the respective trusts for the benefit of each with an equal share of the balance of the trust estate. In our view, this language does not indicate that Frank and Rose intended to require one beneficiary to obtain the consent of the other before withdrawing principal from his or her personal trust and to give the dissenting beneficiary a veto power.

However, defendants argue that the will as a whole instead points to an intent toward "preservation of the [principal] of the three [t]rusts for the benefit of the Sherman grandchildren," and, therefore, also an intent that Sandra, as Robert and Gary's mother, consent to all withdrawals of principal. We disagree. Although the Sherman grandchildren are the ultimate beneficiaries of the balance, "if any," of each trust estate upon the deaths of Leonard and Sandra, each of the three trusts, A, B, and C, contain a provision allowing the primary beneficiary or beneficiaries of the trust to withdraw principal. For instance, the marital trust, Trust A, gave Rose "the right to withdraw * * * so much or all of the principal" of the trust without qualification or limitation. The children's trust, Trust C, conferred on Robert and Gary the right to withdraw principal as well through a provision identical in relevant part to paragraph 11 of Trust B at issue in this appeal.

In our opinion, this indicates an intent that the beneficiary or beneficiaries who are the focus of each trust have control over the principal of that trust, and not solely an intent for the principal of each trust to be preserved for Robert and Gary. Indeed, each trust specifically states that "upon the death of the last [of Rose and Frank's children], the balance then remaining in said Trust Estate, *if any,* shall continue to be held [in trust] for the benefit of Gary L. Sherman and Robert D. Sherman." (Emphasis added.) Thus, the trusts contemplate that there may *not* be principal remaining to be held in trust for Robert and Gary.

The defendants also argue that "the tax impact" of the ability of Leonard and Sandra to withdraw principal from Trust B without consent of the other "sheds great light on its proper interpretation." They maintain that, under relevant federal tax law, a right to unilaterally, rather than jointly, withdraw principal "would be disastrous" for Leonard and Sandra because the trust amount then would be taxable upon their death. Although tax consequences are a factor to be considered, they are only one factor. We cannot say that this consideration alone trumps the other concerns attendant to Frank and Rose's estate planning, such as whether to give one beneficiary a veto power over the other or whether to give the primary beneficiary or beneficiaries of each trust control over the principal. In our view, the will as

a whole does not support, as defendants suggest, the interpretation that Frank and Rose intended that Sandra must assent to, and in effect have a veto over, any and all withdrawals of principal that Leonard may request so that she may ensure that the principal be preserved for her sons.

We also agree with the trial justice that "in hindsight one could always say * * * it would have been much better if the will had been clearer." However, that it could have been clearer does not mean that the provision automatically is ambiguous. We emphasize that "[b]ecause ambiguity lurks in every word, sentence, and paragraph in the eyes of a skilled advocate * * * the question is not whether there is an ambiguity in the metaphysical sense, but whether the language has only one reasonable meaning when construed, not in a hypertechnical fashion, but in an ordinary, common sense manner." *Paul v. Paul*, 986 A.2d 989, 993 (R.I.2010) (quoting *Garden City Treatment Center, Inc. v. Coordinated Health Partners, Inc.*, 852 A.2d 535, 542 (R.I.2004)). In light of the entire will, the provision's ordinary meaning as written supports the conclusion that it unambiguously permits Leonard and Sandra to withdraw no more than the amount of principal in his or her own trust funded by an equal share of the trust estate of Trust B without the consent of the other.[6] Accordingly, we affirm the trial justice's ruling.

## B

## Loan Forgiveness

■ We next consider defendants' argument that the trial justice "erred in refusing to order Leonard and Sandra to each repay $75,000 that they had been overpaid under the 'loan forgiveness' provision in Rose's will." They maintain that "the trial court initially held, during the hearing on October 19, 2006, that Leonard '[was] obligated because of the paragraph 2 [of the order's] ruling to recompense the trust with $75,000.'" Conversely, plaintiff avers that the trial justice's holding that the codicil's loan-forgiveness provision unambiguously "extinguished" Sandra's obligation to repay the loan and did not impact what she was to take under the will "preclude[d]" a requirement that each remit $75,000 back to the estate. Thus, it is plaintiff's position that such a requirement was not "an inevitable consequence" of the trial justice's ruling and that he did not err when he declined to include a repayment obligation in the judgment despite at one point appearing amenable to its inclusion. We agree with plaintiff.

First, defendants' assertion that the trial justice "held" that the parties had an obligation to repay the trust $75,000 is inaccurate. An examination of the transcript of the hearing on October 19, 2007 reveals that he merely suggested language for an amended order after defendants' counsel contended that Leonard "has to pay back, under the other part of your Honor's ruling, [the] excess distribution he has already received from the trust, and we're going to need to work that all out in the final judgment."[7] Yet, as to the effect of the loan-forgiveness provision of the codicil to Rose's will, the trial justice actually held

---

6. Although defendants in their reply brief seek to point out portions of the will in which plural pronouns are used and in which unilateral conduct clearly is prescribed to support their interpretation of paragraph 11 of Trust B under the will-as-a-whole analysis, we find those instances to pale in comparison to the substance of the other provisions of the will that, in our view, more meaningfully inform our determination of Frank and Rose's intent.

7. After the parties vowed to collaborate in drafting an amended order and final judgment and after the trial justice noted that "I

at the hearing on July 25, 2006, that the provision was "absolutely clear" and "any loan made to a child or grandchild is forgiven." As a result, the trial justice declared that Sandra's obligation to repay was "extinguished" and added, "that does not mean that should have any impact whatsoever on what she will take under the will."

The defendants apparently assumed that because this ruling was in favor of Sandra, because it did not require her to repay the loan, they had "won" on the issue. Therefore, they mistakenly concluded that the trial justice had accepted their arguments about the loan-repayment issue wholesale. In fact, the complaint does not ask for resolution of any repayment issue.[8] Moreover, the trial justice's ruling does not contemplate anything further beyond holding that the codicil obviated any loan-repayment obligations and that the amounts taken under the provisions of the will would be unaffected. He conclusively decided this issue and said "that's the end of it."

We hold that contrary to the defendants' assertions, the trial justice did not rule that each was required to pay back $75,000 to the trust and did not err when he refused to include such an order in the judgment.[9] Lastly, because the trial justice conclusively ruled on this issue as it was presented to him, and because a miscellaneous petition is an appropriate manner for "[f]urther relief based on a declaratory judgment," the judgment was final. G.L.1956 § 9–30–8 (setting forth procedure for petitioning for supplemental relief "based on a declaratory judgment"). Therefore, we perceive no error.

## V

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be remanded to that court.

---

take it [that] it is [p]aragraph 2 [of the order] that you're saying may create that obligation [to repay the trust]," the trial justice advised the parties to "spell it out, and, you know, *maybe even put in that,* just so that nobody is unclear, that upon [Leonard's] request the trustee must turn over [Leonard's] share, and, then, of course, [Leonard] is obligated because of the [p]aragraph 2 ruling to recompense the trust with $75,000." (Emphasis added.)

8. The defendants maintain that they raised a claim for repayment in a counterclaim filed in 1997. However, review of the counterclaim reveals that it primarily contended that Leonard's suit violated the will's in terrorem clause. The counterclaim only vaguely requested reimbursement for "distributions paid to Leonard erroneously" and, according to defendants, it was withdrawn.

9. The defendants "urge this Court to decide the $75,000.00 repayment issue on the merits," but they also assert that "[i]t is the [trial justice's] refusal to include in the [j]udgment [his] loan repayment ruling that is the second part of this appeal." Although they argued at length below as well as on appeal about why a payback requirement is consistent with the tax consequences of the ruling that Sandra was not required to repay the loan, the issue of whether the trial justice erred in not ruling that the parties must repay the trust is not before us. Furthermore, Rose's will directed that "[i]n making the computation necessary to determine such sum, the final determinations in the federal estate tax proceedings relating to [her] estate shall control."