**In re ESTATE OF Aram DERMANOUELIAN.**

**No. 2011–195–Appeal.**

Supreme Court of Rhode Island.

June 29, 2012.

Michael S. Marino, Esq., for Appellant.

Keith B. Kyle, Esq., Newport, for Appellee.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

**OPINION**

Justice ROBINSON, for the Court.

The appellant, the Estate of Aram Dermanouelian (the Estate), appeals from a judgment of the Superior Court granting the "Motion for Summary Reversal,"

which had been filed by the appellee, Co–Executor Jo–Ann Dermanouelian. The effect of the Superior Court's ruling was to reverse an order of the Probate Court of the Town of Jamestown. The Probate Court's order that was reversed had granted a "Motion to Strike" filed by the Estate; the target of that motion to strike was the entry of appearance of an attorney whom Ms. Dermanouelian had engaged to represent her in her capacity as a co-executor of the Estate.

On appeal, the Estate contends that the Superior Court erred in granting Ms. Dermanouelian's motion for summary reversal. It is the Estate's contention that a co-executor may act neither unilaterally nor individually in hiring legal counsel to assist the co-executor in his or her official capacity.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issue raised in this appeal should not be summarily decided. After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that cause has not been shown and that this appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel[1]

The instant appeal arises from a dispute among the co-executors of the Estate of Aram Dermanouelian. Mr. Dermanouelian died on December 7, 2006 and left an estate with a gross value of approximately $18 million and a life insurance trust of approximately $5 million. In his last will and testament, Mr. Dermanouelian named as co-executors an attorney, a certified public accountant,[2] and Ms. Dermanouelian (whom the trial justice referred to as the "surviving spouse").[3]

On October 21, 2010, an attorney filed his entry of appearance in the Jamestown Probate Court on behalf of Ms. Dermanouelian in her official capacity as a co-executor. Thereafter, on October 29, 2010, the Estate filed a motion to strike that entry of appearance. As grounds for that motion, the Estate contended (1) that "[n]o single executor has the authority to hire legal counsel for the Estate" and (2) that, in view of the fact that the Estate had not hired the attorney whose entry of appearance was at issue, the Estate would not incur the expense of the additional legal counsel.

In response, Ms. Dermanouelian objected to the motion to strike; she contended that she had the "absolute right to hire her own independent counsel at her own expense to represent her in her capacity as co-executor before [the] [c]ourt." Ms. Dermanouelian further stated that she "has rights and obligations that she must exercise and fulfill and she needs an attorney independent from, and not partial to, Co–Executor Paul Plourde to advise her on very significant decisions she needs to

1. In view of the limited record before the Court, the facts set forth in the first paragraph of the "Facts and Travel" section have been gleaned from the bench decision rendered by the Superior Court trial justice.

2. Both parties' Rule 12A statements filed with this Court indicate that, in addition to Ms.

Dermanouelian, Paul Plourde is a co-executor and is an attorney; the statements further indicate that Everett Marabian is also a co-executor and is a certified public accountant.

3. It is undisputed that Ms. Dermanouelian is a beneficiary of the Estate.

make as co-executor of the estate." She elaborated in her objection that Mr. Plourde had been acting in a dual capacity as a co-executor and as an attorney for the Estate; she added that the other attorneys for the Estate are partners in Mr. Plourde's law firm.

A hearing on the motion to strike was thereafter held in the Jamestown Probate Court. Ultimately, the Probate Court judge granted the motion to strike; he added that he would treat the entry of appearance by the attorney for Ms. Dermanouelian as an indication that the attorney would be representing her "individually and not as co-trustee for the Estate of Aram DerManouelian." An order reflecting that ruling was entered on November 17, 2010.

On the same day, Ms. Dermanouelian, in her capacity as co-executor, appealed the order of the Probate Court to the Superior Court. In her reasons for appeal,[4] she asserted that attorney Paul Plourde, Everett Marabian, and she were the duly appointed co-executors of the Estate. She added that the two attorneys who had "been acting as legal counsel to the Co-Executors of the Estate of Aram Dermanouelian * * * both [were] member[s] of the same law firm as Co–Executor Attorney Paul Plourde." Ms. Dermanouelian stated that Mr. Plourde was serving in a dual capacity as co-executor and as attorney for the Estate. She additionally stated that other attorneys in his office "are presumably providing him legal advice which could conceivably present a conflict of interest when it comes to providing legal advice" to Ms. Dermanouelian.

Ms. Dermanouelian further stated that "there [has been] an irreconcilable breakdown by and between [herself] and the other Co–Executors with respect to the administration of the Estate and in the provision of information and documents concerning the estate plan * * *." Ms. Dermanouelian asserted that she was entitled to legal representation that would be impartial and free of conflict in her capacity as co-executor due to the fact that decisions as to estate administration had to be made and she had found herself in disagreement with the other two co-executors. Ms. Dermanouelian argued that the Probate Court erred by granting the motion to strike her attorney's entry of appearance when it "failed to recognize the inherent conflict of interest that exists by virtue of the fact that [Mr.] Plourde (or his law firm)," the drafters of the documents at issue, had "act[ed] as Co–Executor and is being represented by members of his law firm * * *."

On February 25, 2011, a hearing was held in the Superior Court for Newport County. On that occasion, the trial justice heard arguments from the parties, and at one point bluntly inquired: "What's wrong with [Ms. Dermanouelian] having her own lawyer?" An attorney representing the Estate replied that the Estate has always been supportive of Ms. Dermanouelian's having counsel; he then substantially qualified that response by stating that the Estate was supportive of her having counsel but only in her capacity as a "beneficiary or in [an] individual capacity." The attorney representing the Estate contended that Ms. Dermanouelian should not be represented by counsel in her capacity as co-executor because a co-executor is "the

---

4. *See generally* G.L.1956 § 33–23–1(a)(2) ("Within thirty (30) days after the entry of the order or decree [of a probate court], the appellant shall file in the superior court * * * the reasons of appeal specifically stated, to which reasons the appellant shall be restricted, unless, for cause shown, and with or without terms, the superior court shall allow amendments and additions thereto").

physical embodiment of the estate [and the] estate is the only entity that can hire counsel on its behalf."

The trial justice then stated for the record that the appeal arose from "a motion to the Probate Court in Jamestown" with respect to "an entry of appearance by [an attorney] * * * on behalf of Joanne Der-Manouelian in her capacity as co-executrix of the estate of Aram DerManouelian * * *." The trial justice proceeded to note that, in addition to executing a "Last Will and Testament," Mr. Dermanouelian had executed a revocable living trust (which had been amended once) and also an irrevocable life insurance trust. The trial justice accordingly remarked that "to say that this is a complex estate plan * * * would be an understatement." He added that the duties of the co-executors were "not only to marshall [sic] the estate and to pay the debts and obligations of the estate, making distributions as * * * directed by the decedent, but also [to] minimize[e], if you would, the estate tax liability." He further stated that "there are significant issues of valuation * * * and the inclusion of those values on the estate tax return, both State and Federal, as well as the transfers of those estate assets."

The trial justice noted that the three co-executors included an attorney and a certified public accountant. He further noted that Ms. Dermanouelian, the third co-executor, had no education beyond high school and "does not understand many of the complex estate issues and tax consequences and obligations of the estate." The trial justice stated that Ms. Dermanouelian was simply desirous of having her "own representation, personally, to guide her in her * * * fiduciary obligations, [and] to discharge her duties" as a co-executor of the Estate. The trial justice elaborated that Ms. Dermanouelian would be required to sign documents or sched-

ules as well as accountings—"all of the things that are required, particularly on an estate of this size." He further observed that, as a co-executor, Ms. Dermanouelian would be jointly and severally liable with the other fiduciaries for "any omissions or malfeasance or misfeasance on their part in discharging their duties."

The trial justice concluded that it was "prudent" of Ms. Dermanouelian to seek her own counsel in order to obtain advice as to whether she might incur "any personal liability by signing certain documents or what the possible consequences are." He added that, in his view, retaining independent counsel is "a fundamental right of any individual, [which is] not bound by a majority vote." Accordingly, the trial justice reversed the Probate Court's order that had granted the motion to strike the entry of appearance of an attorney whom Ms. Dermanouelian had engaged to represent her in her capacity as a co-executor. A judgment to that effect was entered on March 4, 2011, and the Estate timely appealed that judgment.

## II

### Standard of Review

Although Ms. Dermanouelian's appeal of the Probate Court's order was entitled "Motion for Summary Reversal," the issue presented was and is purely legal in nature. For that reason, we shall apply summary judgment principles to our review of the "Motion for Summary Reversal." *See, e.g., Estate of Giuliano v. Giuliano,* 949 A.2d 386, 389–90 (R.I.2008); *Sindelar v. Leguia,* 750 A.2d 967, 969 (R.I. 2000); *In re Estate of Lagasse,* 723 A.2d 792, 792 (R.I.1998) (mem.).

■■■ This Court reviews a trial justice's decision on a motion for summary judgment in a *de novo* manner. *Estate of Giuliano,* 949 A.2d at 391; *see also Narra-*

gansett Electric Co. v. Saccoccio, 43 A.3d 40, 44 (R.I.2012); Generation Realty, LLC v. Catanzaro, 21 A.3d 253, 258 (R.I.2011). We perform such a review in the same manner as did the trial justice, "reviewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party." Fiorenzano v. Lima, 982 A.2d 585, 589 (R.I.2009). This Court will affirm a trial justice's grant of summary judgment "only [i]f we conclude, after viewing the evidence in the light most favorable to the nonmoving party, that there is no genuine issue of material fact to be decided and that the moving party is entitled to judgment as a matter of law * * *." Gushlaw v. Milner, 42 A.3d 1245, 1251 (R.I.2012) (alteration and omission in original) (internal quotation marks omitted); see also Pereira v. Fitzgerald, 21 A.3d 369, 372 (R.I.2011). Conversely, summary judgment is not appropriate "if there are any genuine issues of material fact or if the moving party cannot prevail as a matter of law." Narragansett Electric Co., 43 A.3d at 44 (internal quotation marks omitted); see also DeMarco v. Travelers Insurance Co., 26 A.3d 585, 605 (R.I.2011).

## III

### Analysis

The Estate urges this Court to rule that "Co–Executors in the State of Rhode Island are not expressly authorized to hire independent legal counsel to provide representation in the administration of an estate and the performance of their duties as Co–Executor;" it further contends that co-executors "are required to act upon at least the vote or assent of a majority."

We note at the outset that we need not address, in the context of the instant case,

the question of whether a co-executor may engage independent counsel *at the expense of the estate.* The instant case presents a substantially easier question in view of the fact that Ms. Dermanouelian is *not* seeking to have the Estate pay the fees of the attorney whom she wishes to represent her in her capacity as co-executor; instead, she has expressed a willingness to pay those fees *at her own expense.*

■ It is our opinion that a co-executor may individually engage counsel at any time to represent him or her in his or her capacity as a co-executor—at least when the attorney is engaged at the co-executor's expense. *See, e.g., Conway v. Parker,* 250 N.W.2d 266, 273 (N.D.1977) ("A representative may, of course, individually employ counsel at any time if he [or she] does so at his [or her] own expense."); *Young v. Alexander,* 84 Tenn. 108, 110 (1885) (holding that, "in view of [an executor's] personal liability for the proper management and conduct of the administration, and the advice and assistance of counsel being for his [or her] own protection, and he [or she] being himself [or herself] liable to them for their compensation, he [or she] has a right to select and employ his [or her] own counsel."). *See generally* 34 C.J.S. *Executors and Administrators* § 337 at 178 (2009) ("Where there are cofiduciaries, it is normally the right of each fiduciary to employ separate counsel, if the cost to the estate is not duplicated thereby." (footnote omitted)).

■ We recognize that complications will often arise when one or more co-executors personally select(s) an attorney to represent him or her in that capacity. *See, e.g., In re Estate of Greenberg,* 15 Ill.App.2d 414, 146 N.E.2d 404, 408 (1957) [5]

---

**5.** The Estate relies on *In re Estate of Greenberg,* 15 Ill.App.2d 414, 146 N.E.2d 404

(1957), to support its contention that an estate administered by co-executors, each with his

("If each co-executor were to be allowed independent counsel, it could well be that in the approach to every decision there would be as many opinions as co-executors."); *In re Fraser*, 165 A.D. 441, 150 N.Y.S. 774, 775 (1914) ("The multiplication of attorneys is, of course, to be deprecated, and the better course undoubtedly is that all of the executors shall be represented by the same attorneys.").

■ Nevertheless, we are of the opinion that, in view of a co-executor's role as a fiduciary (with all of the attendant responsibility and potential liability that that role entails) and bearing in mind the personal nature of the attorney-client relationship, it is "essential that he [or she] have the selection of the attorney who is to assist him [or her] in the performance of duties imposed on him [or her] by law." *See Conway*, 250 N.W.2d at 273; *see also Chancey v. West*, 266 Ala. 314, 96 So.2d 457, 462 (1957) ("*The executor is himself [or herself] a fiduciary, responsible for the performance of his [or her] duties and liable for his [or her] failures.* It is essential that he [or she] should have the selection of the attorney who is to assist him [or her] in the performance of the duties imposed upon him [or her] by law and for the failure to perform which he [or she] might be personally liable." (emphasis in original)); *In re Fraser*, 150 N.Y.S. at 775 ("[W]hen several persons have been named as executors, a certain degree of personal and individual responsibility rests upon each of them as to the manner in which any opposition to the probate of the will shall be met, and when one executor is honestly, not capriciously, dissatisfied with the method of defense adopted by the original attorney for the executors, we are not

prepared to say that he [or she] may not employ an additional and independent attorney."); 31 Am.Jur.2d *Executors and Administrators* § 414 at 291 (2002) ("[T]he attorney-client relationship is a very personal one, and because a personal representative is a fiduciary, it is essential that he [or she] have the selection of the attorney who is to assist him [or her] in the performance of duties imposed on him [or her] by law"). As a result, we deem it to be appropriate that Ms. Dermanouelian has engaged her own counsel to represent her in her capacity as a co-executor.

The Estate has argued that its contention that Ms. Dermanouelian is not entitled to engage counsel to represent her in her capacity as co-executor is consistent with specific provisions of the General Laws. The Estate specifically references G.L. 1956 §§ 33–14–12, 33–18–2, and 33–18–17 as supportive of its contention that an executor aggrieved by the actions of another executor has available statutory means whereby the issues about which he or she is aggrieved can be addressed—and that, therefore, the aggrieved co-executor need not engage independent counsel. Although the cited statutes do authorize the bringing of a claim in the name of the Estate or the requesting of an accounting to monitor the co-executors, nowhere in those provisions has the General Assembly sought to preclude a co-executor from retaining counsel in order to obtain guidance in carrying out his or her fiduciary duties. There being no indication that the General Assembly expressed an intent that the above-cited statutory remedies were to be exclusive, we reject the Estate's contentions to that effect.

or her own independent counsel "would lose the advantage of fluid administration and would have its funds diminished by legal expenses." *Id.* at 408, 146 N.E.2d 404. As to the first point, we would simply observe that

"fluid administration" must at times yield to more important values. As to the second point, we reiterate the fact that Ms. Dermanouelian has not petitioned the court for payment of her attorneys' fees by the Estate.

Accordingly, it is our view that the trial justice was entirely correct in granting Ms. Dermanouelian's motion for summary reversal of the Probate Court's order.

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record may be returned to that tribunal.