May 28, 2026

**Supreme Court**

No. 2024-329-Appeal.
(PP 21-1654)

William Fairhurst, Co-Executor, et al.　　:

　　　　　　v.　　　　　　　　　　:

James Fairhurst et al.　　　　　:

NOTICE:　This opinion is subject to formal revision before publication in the Rhode Island Reporter.　Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

William Fairhurst, Co-Executor, et al.   :

v.                                       :

James Fairhurst et al.                   :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  The appellants, William H. Fairhurst and Mary Fairhurst, in their capacity as co-executors of the Estate of Harry Fairhurst (collectively, the co-executors or appellants), appeal from a final judgment entered in Providence County Superior Court affirming an order of the Cumberland Probate Court that voided the real estate sale of testator Harry Fairhurst's property to one of the co-executors, William Fairhurst, and his wife, Caroline Fairhurst.  Before this Court, the co-executors argue that the Superior Court erroneously applied G.L. 1956 § 33-19-9 and misconstrued material provisions of the testator's will.  The co-executors further assert that, under the terms of the testator's will, the co-executors were permitted to sell estate assets without probate court approval. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and

reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**Facts and Travel**

The testator, Harry Fairhurst, died on February 11, 2019. Prior to his passing, the testator executed a Last Will and Testament on August 11, 1981, and a codicil thereto on June 18, 1997 (collectively the testator's will). Under the terms of the will and codicil, the testator bequeathed the entirety of his estate in equal shares to his seven children (the devisees): William H. Fairhurst, Mary L. Fairhurst, George A. Fairhurst, Carol Whelan, Robert A. Fairhurst, James P. Fairhurst, and Elaine F. Pickering.[1] The will designated two of his seven children, William and Mary, to serve as co-executors of his estate. In March of 2019, the co-executors filed a petition in Cumberland Probate Court to admit the testator's will. The probate court admitted the testator's will to probate, and appointed appellants as co-executors of the estate. The principal asset in the estate was the testator's home located at 101 Scott Road, Cumberland, Rhode Island (the property).

Paragraph four of the testator's will authorized the co-executors to "sell any or all of [the testator's] estate without obtaining permission from the Probate Court,

---

[1] Due to the appellants and appellees sharing the same last name, for clarity, we will refer to the parties by their first names. No disrespect is intended.

but before exercising said authority, [the] executors must notify [the testator's] children that they have the option to purchase * * *." The paragraph specifies that "notification must be made by mail and an affidavit that [the devisees] have been so notified will be sufficient for the executors to make a sale" if the devisees do not notify the co-executors of the devisees' intent to purchase the property "within ten days of the mailing of the notice."

On July 22, 2020, the estate's attorney, Richard Foster (Attorney Foster), sent a letter to each of the devisees, notifying them of their option to purchase the property. The letter did not include the terms of the option. The letter specified that the devisees were required to notify either or both co-executors, in writing, of a devisee's intent to purchase the property no later than August 1, 2020. None of the devisees responded to this letter.

At numerous family meetings after the testator's death, William verbally expressed to the other devisees that he was interested in purchasing the property. At one of the family meetings, the devisees held a vote on whether they should sell the property on the open market. The devisees voted 4 to 2, with one abstention, not to place the property on the market for sale.

On October 23, 2020, Attorney Foster sent a second letter to the devisees stating that William intended to purchase the property for a sale price of $260,000 and that the closing for the sale would "occur hopefully within the next week or so."

In the letter, Attorney Foster explained that any objections to the sale should be communicated to the co-executors. None of the devisees responded to the letter or raised objections to the sale at that time.

On November 24, 2020, William and his wife, Caroline, purchased the property for $260,000, after obtaining a $247,000 mortgage loan from Pawtucket Credit Union. In order to effectuate the sale, William acquired a $17,192 advance payment from his probate share of the estate to contribute to the purchase price. As part of the financing procedure, Pawtucket Credit Union appraised the property and valued it at $330,000 as of July 2, 2020. In addition, the co-executors obtained a comparative market analysis which proposed a listing price of $285,000 as of January 8, 2020.

On December 2, 2020, Attorney Foster sent a third letter to the devisees notifying them of the sale of the property to William and Caroline. Attorney Foster explained in his letter that after the consummation of the sale, the residuary of the estate would be distributed equally among the remaining devisees.

The co-executors filed their first accounting for the estate with the Cumberland Probate Court on January 19, 2021. The first account detailed the financial terms of the sale of the property to William and Caroline. On January 21, February 3, and February 5, 2021, respectively, appellees James, Robert, and George (collectively, the remaining devisees or appellees) filed objections to this

- 4 -

accounting, contesting the valuation of the real estate and the terms of the conveyance.[2] The remaining devisees did not raise an objection to the sale on the ground that the sale violated § 33-19-9. The probate court held a hearing on the accounting; and, without hearing argument, the probate judge denied approval of the co-executors' first accounting. The probate judge entered an order declaring that the real estate sale was "invalid and illegal" because the co-executors failed to seek probate court approval before the sale of estate property in compliance with § 33-19-9. The probate court's order required that the property remain vested in the testator's estate.

The co-executors appealed the order of the probate court to the Superior Court. In due course, the remaining devisees filed motions for summary judgment with accompanying memoranda. The co-executors then filed an objection to the remaining devisees' motions for summary judgment and filed a cross-motion for summary judgment with an accompanying memorandum. Ultimately, the parties submitted an agreed-upon statement of facts in the Superior Court.

In Superior Court, the co-executors argued that § 33-19-9 was inapplicable to the facts of this case because the testator's will authorized the co-executors of the estate to sell estate property without probate court approval. William and Mary

---

[2] James, Robert, and George each filed objections to the first accounting. The other two devisees, Carol and Elaine, neither filed any objections in Cumberland Probate Court nor did they enter their appearance in any appellate proceedings.

asserted that the probate court judge declaring *sua sponte* that the sale was void in violation of § 33-19-9, without a notice or hearing, was a denial of their due-process and equal-protection rights. They further argued that the testator intended for the property to stay in the family, and, thus, the testator intended to effectuate an option in favor of the devisees in his will. Therefore, according to the co-executors, the only way for a devisee to exercise his or her right to the option was for a devisee to notify the co-executors of his or her intent to purchase the property within ten days of Attorney Foster's July 2020 letter. The co-executors asserted that William complied with said requirement when he verbally expressed his intent to purchase the property at various family meetings. Further, the co-executors asserted the doctrine of laches and contended that, because the other devisees did not object or respond to the October 2020 notice regarding the sale and only objected at the first accounting, William was unfairly prejudiced.

The remaining devisees argued that the co-executors had a fiduciary obligation to all interested parties of the estate and, thus, were prohibited from purchasing assets from an estate over which the fiduciaries managed. They argued that the only exception to this general rule is governed by § 33-19-9, which permits a court-appointed co-executor to purchase real estate from the estate over which the fiduciary manages, if the co-executor files a petition in the probate court requesting approval for the sale—which William did not. The remaining devisees also asserted

- 6 -

that the co-executors' laches argument was without merit because they objected to the proposed purchase price of the property prior to the formal objection at the first accounting. Separately, James further argued that the testator did not intend to create a right of first refusal or option to purchase in his will due to the lack of specific terms of a sale.

The Superior Court entered a written decision on June 25, 2024, affirming the order of the Probate Court and declaring the sale of the property to William and Caroline void. The trial justice determined that, pursuant to § 33-19-9, if either William or Mary wanted to exercise their right to purchase the property, he or she was required to file a petition to sell in probate court and provide proper notice to the remaining devisees. The trial justice remanded the case to the probate court for further proceedings consistent with the trial justice's decision and final judgment was entered on September 20, 2024. The co-executors filed a timely notice of appeal to this Court.

**Standard of Review**

"It is well established that a probate appeal to the Superior Court 'is *de novo* in nature.'" *Larkin v. Arthurs*, 210 A.3d 1184, 1190 (R.I. 2019) (deletion omitted) (quoting *Lett v. Giuliano*, 35 A.3d 870, 876 (R.I. 2012)). Likewise, "[t]his [C]ourt examines an appeal from cross-motions for summary judgment *de novo*." *Glassie v. Doucette*, 159 A.3d 88, 93 (R.I. 2017) (quoting *5750 Post Road Medical Offices,*

- 7 -

*LLC v. East Greenwich Fire District*, 138 A.3d 163, 166 (R.I. 2016)). "In reviewing the Superior Court's judgment on the parties' motions for summary judgment, we apply the same standards as those used by the trial court." *Id.* (deletion omitted) (quoting *5750 Post Road Medical Offices, LLC*, 138 A.3d at 166). Accordingly, "[s]ummary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Estate of Garan*, 249 A.3d 1254, 1257 (R.I. 2021) (quoting *Glassie*, 157 A.3d at 1096). "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Id.* (quoting *Glassie*, 157 A.3d at 1096). "Summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Id.* (quoting *Glassie*, 157 A.3d at 1096).

Additionally, "[w]hen interpreting the language of a will * * * we proceed on a *de novo* basis, just as we do when we interpret the language in contracts." *Lazarus v. Sherman*, 10 A.3d 456, 462 (R.I. 2011) (quoting *Hayden v. Hayden*, 925 A.2d 947, 950 (R.I. 2007)).

**Discussion**

**Section 33-19-9**

We begin with the co-executors' argument that the trial justice erred in affirming the order of the Cumberland Probate Court to void the sale of the property to William and Caroline as violative of § 33-19-9. *See* § 33-19-9. The co-executors argue that § 33-19-9 is inapplicable to the present case because paragraph four of the testator's will did not require the co-executors to seek probate court approval prior to purchasing property in the estate. The co-executors further assert that the probate court violated their due-process and equal-protection rights by *sua sponte* determining, without notice or hearing, that the conveyance violated § 33-19-9. Additionally, the co-executors deny that William engaged in self-dealing when he obtained a $17,192 advance from his share of the estate to apply to the purchase price of the property. Conversely, the remaining devisees contend that the trial justice did not err in finding that the requirements of § 33-19-9 are mandatory as to the sale of any property in the testator's estate and in upholding the probate court's *sua sponte* voiding of the sale.

The trial justice found that the co-executors were required to "seek and receive probate court approval for any sale of real estate" to themselves "by private contract pursuant to § 33-19-9." The trial justice reasoned that "[t]he Probate Court judge must be satisfied that the private sale will not be prejudicial to the interests of the

- 9 -

estate[,]" which includes "set[ting] forth th[e] sale price in its decree authorizing the sale." Accordingly, the trial justice determined that, because William did not obtain probate court approval to sell the property to himself or to credit himself with a $17,192 advance from his share of the estate to apply to the purchase price, William engaged in self-dealing pursuant to the statute.

With respect to the co-executors' due process argument, the trial justice found that § 33-19-9 conferred "authority on a probate court judge to find the sale of the property void without holding a hearing." The trial justice explained that the public policy behind § 33-19-9 was "to prevent self-dealing transactions" by co-executors of a decedent's estate, as was applicable here.

Before this Court, the co-executors argue that § 33-19-9 is inapplicable because the testator's will authorized his co-executors to sell "any and all of [the testator's] estate without obtaining permission from the Probate Court * * *." We disagree.

"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Rosario v. Nationstar Mortgage, LLC*, 332 A.3d 173, 178 (R.I. 2025) (brackets omitted) (quoting *Progressive Casualty Insurance Co. v. Dias*, 151 A.3d 308, 311 (R.I. 2017)). Likewise, "[i]n matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended

by the Legislature." *Id.* (quoting *Progressive Casualty Insurance Co.*, 151 A.3d at 311).

Section 33-19-9 states:

> "The probate court may authorize executors, administrators, and guardians, at their option, to sell real estate of a deceased or of a ward, either at public auction or by private contract. The court, on petition with notice, if satisfied that the action will not be prejudicial to the interests of the estate, may authorize the petitioner to become the purchaser of the real estate, at public or private sale; provided, however, that, in any instance, if a sale be made by private contract, the sale shall be made for not less than the sum fixed by the court in its decree authorizing the sale."

Accordingly, the probate court may authorize a co-executor to become a purchaser of property in an estate over which he or she manages; however, "in any instance, if a sale be made by private contract, the sale shall be made for not less than the sum fixed by the court in its decree authorizing the sale." Section 33-19-9; *see Barlow v. Barlow*, 49 R.I. 117, 118, 140 A. 467, 468 (1928) ("As the court authorized the administrator to sell the real estate at private sale, it was necessary for [the court] to fix a sum below which the sale should not be made.").

It is clear that probate court approval was necessary to fix a minimum purchase price for the property and to ensure that William's dual capacity as both co-executor and purchaser did not prejudice the remaining beneficiaries of the estate—affording a fair and just result. *See* § 33-19-9; *see also Estate of Wickes v.*

*Stein*, 107 R.I. 260, 265-66, 266 A.2d 911, 914 (1970). Indeed, a co-executor must duly admit a will to probate so that the probate court can administer the distribution of the testator's estate in a manner consistent with the testator's intent. *See* 79 Am. Jur. 2d *Wills* § 710 (May 2026 Update) ("The validity of a will is not established until the will is admitted to probate, and a will cannot be taken notice of or given effect until it has been probated.") (footnotes omitted); *see also Wilkinson v. Leland*, 27 U.S. 627, 655-56 (1829) (noting that "by the laws of Rhode Island, the probate of a will in the proper probate court is understood to be an indispensable preliminary to establish the right of the devisee"). Therefore, if William intended to purchase the property in a private sale, he was required to seek approval from the probate court; and, if the sale were approved, the court would "fix a sum below which the sale should not be made." *Barlow*, 49 R.I. at 118, 140 A. at 468; *see* § 33-19-9.

The co-executors contend that William did not engage in self-dealing or violate his fiduciary duty as co-executor of the estate by purchasing the property himself. They also argue that William properly exercised his right to purchase the property as a beneficiary of the estate and, thus, was not required to seek probate court approval. The co-executors further aver that their due-process rights were violated when the probate court judge declared the sale void and invalid without first issuing notice or a hearing to provide them an opportunity to argue their position. We disagree.

"This Court has acknowledged that a fiduciary relationship can arise either by virtue of a strong personal or familial relationship of trust or by formal relationships * * *." *In re Estate of Ross*, 131 A.3d 158, 167 (R.I. 2016); *see* G.L. 1956 § 18-4-15(a)(2). Hence, William, as co-executor, owed a duty "'of trust and confidence * * * to act with the utmost good faith' * * * 'and with due regard to the interests of the one reposing confidence.'" *In re Estate of Ross*, 131 A.3d at 167 (first quoting *Notarantonio v. Notarantonio*, 941 A.2d 138, 145 (R.I. 2008); then quoting 37 Am. Jur. 2d *Fraud and Deceit* § 35 at 64 (2013)); *see In re Estate of Dermanouelian*, 51 A.3d 327, 332 (R.I. 2012) ("The executor is himself or herself a fiduciary, responsible for the performance of his or her duties and liable for his or her failures.") (brackets and emphasis omitted) (quoting *Chancey v. West*, 96 So. 2d 457, 462 (Ala. 1957)); *see also Estate of Wickes*, 107 R.I. at 265-66, 266 A.2d at 914 ("An executor appointed by the probate court is an officer of that court * * * 'though holding the title to the personal assets, is not absolute owner of them. * * * He holds them in trust to pay the debts of the deceased, and then to discharge his legacies; * * * he is personally responsible for any breach of duty.'") (quoting *Smith v. Ayer*, 101 U.S. 320, 327 (1879)).

In 2020, William received a bank appraisal of $330,000, and a comparative analysis that resulted in a proposed listing price of $285,000. Nonetheless, William purchased the property for $260,000 with a $17,192 advance from his share of the

residual estate. Consequently, William breached his duty to act in good faith when he instituted his own purchase price and obtained an advance of his remainder share of the estate to apply to the purchase price, absent court approval. *See In re Estate of Ross*, 131 A.3d at 167; *see also In re Estate of Dermanouelian*, 51 A.3d at 332; *see also* § 33-19-9. As addressed by the trial justice, in enacting § 33-19-9, the General Assembly intended to prevent representatives of a decedent's estate from engaging in self-dealing transactions, as was the case here. *See* § 33-19-9. Therefore, the probate court properly voided the sale of the property. *See* § 33-19-9. Additionally, we conclude that because the co-executors sold the property to themselves without probate court approval in violation of § 33-19-9, we need not address the co-executors' due-process argument that notice, or a hearing was required prior to declaring the sale void.

## Testator's Intent

The co-executors argue that the trial justice erred in affirming the probate court's order to void the sale of the property to William and Caroline because the court found that the co-executors' notice to the devisees of their option to purchase was defective in part. The co-executors aver that the trial justice did not adhere to the testator's intent when construing the testator's will because the trial justice misinterpreted material provisions of said will. They assert that the will only required the co-executors to notify the devisees by mail of their option to purchase

- 14 -

the property; it did not require the co-executors to include precise terms of the sale in its notice.

The remaining devisees argue that the trial justice properly determined that the co-executors' mailed notice to the devisees was defective in part because the option to purchase lacked the precise terms and conditions of the sale. Alternatively, the remaining devisees argue that even if this Court determines that the notice was effective, then William did not comply with the terms of the will which required him to give written notice of his intention to exercise his right to purchase the property as one of the devisees.

The trial justice found that, under the terms of the will, the testator "[c]learly * * * intended to create an option to purchase in favor of the [d]evisees" and not a right of first refusal. Accordingly, the trial justice found that the co-executors' mailed notice to the devisees was defective in part because it "lacked precise terms" of the sale including "the price for the property, fees, and other conditions of the sale." The trial justice reasoned that, at common law, "[a]n option is defined as 'a unilateral contract in which the optionor agrees with the optionee that he has a right to buy the optionor's property according to the precise terms and conditions of the contract.'" (Quoting *Hood v. Hawkins*, 478 A.2d 181, 185 (R.I. 1984).) We agree.

This Court has long established that our "primary objective when construing language in a will or trust is to ascertain and effectuate the intent of the testator or

settlor as long as that intent is not contrary to law." *Estate of Cassiere v. Cassiere*, 246 A.3d 391, 398 (R.I. 2021) (quoting *Jaffe v. Pournaras*, 178 A.3d 978, 981 (R.I. 2018)). "That is the cardinal rule in construing wills." *Industrial Trust Company v. Flynn*, 74 R.I. 396, 408, 60 A.2d 851, 857 (1948). Accordingly, "[this] Court first considers 'the plain language of the will or trust.'" *Estate of Cassiere*, 246 A.3d at 398 (quoting *Jaffe*, 178 A.3d at 981). And "[w]e will not resort to considering extrinsic evidence where the intent is clear 'from within the four corners of the will.'" *Jaffe*, 178 A.3d at 981 (brackets omitted) (quoting *Hayden*, 925 A.2d at 951); *see Rhode Island Hospital Trust Co. v. Egan*, 52 R.I. 384, 387, 161 A. 124, 125 (1932) ("The fundamental rule of construction of a will is that the intention of the testator is to be made effective if it is not in violation of law.").

Paragraph four of the testator's will provides that the co-executors of the estate may sell

> "any or all of my estate without obtaining permission from the Probate Court, but before exercising said authority, my executors must notify my children that they have the option to purchase, and such notification must be made by mail and an affidavit that they have been so notified will be sufficient for the executors to make a sale if they have not been notified by the children that they intend to purchase within ten days of the mailing of the notice."

While we agree with the co-executors that the testator clearly intended to authorize the sale of estate property without probate court approval, any such sale would conflict with the plain language of § 33-19-9. *See* § 33-19-9. As this Court

- 16 -

has long established, "the intention of the testator is to be made effective if it is not in violation of law." *Rhode Island Hospital Trust Co.*, 52 R.I. at 387, 161 A. at 125. Therefore, in this instance, where the testator's will and § 33-19-9 conflict, the statute controls. Accordingly, despite any intent to the contrary, William was required to seek probate court approval prior to purchasing the property in the estate, pursuant to § 33-19-9. *See* § 33-19-9.

The co-executors acknowledge that a plain reading of the will demonstrates the testator's intent to execute an option to purchase in favor of the devisees. They contend, however, that paragraph four required only that the co-executors send written notice to the devisees of their option to purchase the property and give the devisees ten days—from the mailing of said notice—to respond and notify the co-executors of their intent to purchase the property. The co-executors argue that they were not required to include specific terms and conditions in their written notice to the devisees because that requirement was not specified in paragraph four of the testator's will. They contend that "the issues of 'price, fees and other conditions of the sale' would only arise after one or more children did exercise their option to purchase and so notified the [c]o-[e]xecutors"—which no devisee did.

The co-executors' understanding, however, is inconsistent with this Court's caselaw. While we recognize that paragraph four of the will did not state that the co-executors were required to include precise terms of the option in its notice to the

- 17 -

devisees, without the essential terms including purchase price, the option agreement was legally invalid. *See Haydon v. Stamas*, 900 A.2d 1104, 1111 (R.I. 2006) ("[A]n option contemplating the purchase of land, like a contract for the sale thereof, is enforceable * * * 'if [a note or memorandum in writing] provides the identity of the seller and the buyer, their respective intention to sell and to purchase, such a description of the subject matter of the sale * * *, the purchase price, and the terms of the payments if the sale is not for cash.'") (brackets and emphasis omitted) (quoting *Vigneaux v. Carriere*, 845 A.2d 304, 306 (R.I. 2004)). Further, absent probate court approval pursuant to § 33-19-9, William, as co-executor, could not exercise his option to purchase the property.

**Laches**

Finally, the co-executors raise the issue of laches, arguing that "[a]ppellees knowingly sat on their right to object to any sale to [a]ppellant William Fairhurst without taking any affirmative action to simply notify [a]ppellants or the [e]state attorney, in writing, to the detriment of [a]ppellants and Caroline Fairhurst." The co-executors contend that appellees' "delay in challenging th[e] sale has certainly worked a disadvantage to [a]ppellants * * * wherein there has been a substantial change, in good faith, that cannot be fully restored, so that delay becomes inequitable and should operate as an estoppel against [a]ppellees' delayed assertion of their rights."

- 18 -

"Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." *Mitola v. Providence Public Buildings Authority*, 273 A.3d 618, 630 (R.I. 2022) (quoting *Branson v. Louttit*, 213 A.3d 417, 428 (R.I. 2019)). "The defense of laches involves not only delay but also a party's detrimental reliance on the status quo." *Id.* (quoting *Hazard v. East Hills, Inc.*, 45 A.3d 1262, 1269-70 (R.I. 2012)). Moreover, "[l]aches is not mere delay, but delay that works a disadvantage to another." *Id.* (quoting *Hazard*, 45 A.3d at 1270). "Because it is equitable in nature, the applicability of the defense of laches in a given case generally rests within the sound discretion of the trial justice." *Hazard*, 45 A.3d at 1270.

In considering this issue, the trial justice found that the co-executors' laches argument "[wa]s unavailing because [a]ppellees had expressed displeasure with the terms of the proposed sale to William and his wife and were not given an adequate opportunity to object prior to the first account" due to the "expeditious timeline" for consummation of the sale. We agree.

As the record reveals, the co-executors did not file an accounting with the probate court for the residual of the estate until after William took affirmative steps to complete the sale of the property to himself. Prior to the first accounting, William instituted a purchase price of $260,000, obtained a $247,000 mortgage from Pawtucket Credit Union, and took a $17,192 advance from his beneficiary share of

the estate. Furthermore, William obtained property appraisals, a home inspection, and an estimate for necessary repairs to the property.[3] All of these actions were taken without probate court approval or notification to the remaining beneficiaries of the estate. Therefore, it is clear that the remaining devisees were not given adequate notice or sufficient time to address their dissatisfaction with the terms of the sale until the first account—at which point the sale was complete. The "mere delay" by the remaining devisees occurred because the necessary information regarding the transaction, particularly the purchase price, repair costs, and William's intent to use his share of estate assets to put toward the purchase price were not presented to probate court before the sale. *Mitola*, 273 A.3d at 630. Therefore, the trial justice properly rejected the co-executor's laches argument.

## Conclusion

For the reasons stated herein, we affirm the Superior Court judgment. The papers in this case may be remanded thereto.

Justice Golberg participated in the decision but retired prior to its publication.

---

[3] The record reveals that the co-executors reduced the purchase price of the property to include a credit for the value of necessary repairs to the property. This reduction in price would have been dealt with in probate court had William sought approval to fix a minimum price that would have included any credit for said repairs. *See* G.L. 1956 § 33-19-9.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | William Fairhurst, Co-Executor, et al. v. James Fairhurst et al. |
| **Case Number** | No. 2024-329-Appeal. (PP 21-1654) |
| **Date Opinion Filed** | May 28, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Presiding Justice Joseph A. Montalbano |
| **Attorney(s) on Appeal** | For Appellants: <br><br> Monica Horan, Esq. <br> For Appellees: <br><br> Nicholas Gorham, Esq. |